UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALTIMA JOHNSON, Individually and )
as Heir and Natural Guardian of )
CARLTON JOHNSON, )
    Plaintiffs, )
)
v. )    C.A. No. 18-212-JJM-PAS
)
HORACE JOHNSON; STATE ROAD )
AUTO SALES INC.; and ARBELLA )
MUTUAL INSURANCE COMPANY, )
    Defendants. )

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This case arises out of a car accident in which the Defendant, Horace Johnson ("Horace") was the driver, and his cousin, Carlton Johnson ("Carlton") was the sole passenger. Carlton filed this suit through his mother to recover damages for serious injuries sustained in the accident. Althea Johnson ("Ms. Johnson"), Carlton's mother, looks to recover damages for her caretaking of Carlton. The Plaintiffs originally filed this case in the Superior Court of Rhode Island, against the Defendants Horace, his insurer Arbella Mutual Insurance Company ("Arbella"), and the car's lessor, State Road Auto Sales ("State Road"). Arbella removed the case to this Court under 28 U.S.C. §§ 1332, 1441. ECF No. 1. The Defendants now move for summary judgment on all counts. For the reasons below, the Court GRANTS summary judgment to the Defendants on all counts. ECF No. 15.

I.   FACTUAL BACKGROUND

On December 17, 2017, Horace, a resident of Massachusetts, was driving a car in Providence, Rhode Island. ECF No. 16 at ¶¶ 3,5. Carlton, a Rhode Island resident then 28 years old, was Horace's passenger. ECF No. 16 at ¶¶ 2, 7. A single-car accident occurred when the car struck a utility pole. ECF No. 16 at ¶ 8. Both Horace and Carlton were seriously injured. ECF No. 16 at ¶ 9. Ms. Johnson, a Rhode Island resident, was not present at the scene of the accident. ECF No. 16 at ¶ 16. However, the Plaintiffs allege that Ms. Johnson "provide[d] round the clock care and assistance" to Carlton after the accident because of his injuries. ECF No. 9-1 at ¶ 16.

The car Horace was driving on the day of the accident was leased to him by its owner, State Road, a Massachusetts corporation. ECF No. 16 at ¶ 6. Horace was insured by Arbella, also a Massachusetts corporation, under an automobile insurance policy that provided a limit of $100,000 of bodily injury coverage for guest occupants injured in accidents outside Massachusetts. ECF No. 16 at ¶¶ 10-11.

In a letter dated January 25, 2018, about a month after the collision, Carlton's counsel reached out to Arbella and demanded a settlement for his bodily injury claims against Horace at the policy limits of $100,000. ECF No. 16 at ¶ 12. Arbella then investigated to determine their coverage of the incident, claiming a potential issue with Horace's residency. ECF No. 16 at ¶ 13. After the investigation, Arbella's counsel, in a letter dated February 28, 2018, sent a response to Carlton's counsel in which Arbella accepted Carlton's demand to settle his claims against Horace for the policy limits of $100,000. ECF No. 16 at ¶ 14.

Carlton and Ms. Johnson then filed suit on March 6, 2018. ECF No. 3. Count I of their complaint seeks damages for Carlton's "severe personal injuries, which continue to date" causing "significant hospitalization, medical treatment, home health care, rehabilitation, lost wages, loss of consortium, permanent injuries, as well as loss of earning capacity." ECF No. 9-1 at ¶ 11. Count II seeks damages for Ms. Johnson's post-accident care of Carlton, namely her "loss of wages, mental and emotional infliction of distress, loss of consortium benefits, and other damages." ECF No. 9-1 at ¶ 16. Count III claims that the Defendants both disregarded Rhode Island insurance settlement law and violated and breached Massachusetts insurance settlement law. ECF No. 9-1 at ¶ 18-19.

## II. STANDARD OF REVIEW

Summary judgment is called for when the pleadings and discovery materials show "that there is no genuine dispute as to any material fact," so that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is proper, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in his favor. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st. Cir. 1991).

## III. DISCUSSION

### A. Settlement

Both Count I and Count III of the Plaintiffs' complaint hinge on whether the parties entered into a valid settlement contract for the policy limits. First, if there

was a valid settlement between Carlton and Arbella, Carlton's bodily injury claims, Count I, cannot be brought in court. Second, a timely settlement between Carlton and Arbella destroys the Count III claims against Arbella, which allege disregard and breach of various insurance settlement laws and bad faith.

1. Count I

In Rhode Island, settlements are considered contracts and thus are governed by Rhode Island contract law. *Furtado v. Goncalves*, 63 A.3d 533, 538 (R.I. 2013). Rhode Island contract law requires that a valid contract have "competent parties, subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *Rhode Island Five v. Med. Assocs. of Bristol Cty., Inc.*, 668 A.2d 1250, 1253 (R.I. 1996). Mutuality of agreement, or mutual assent, requires that "each party to the contract . . . have the intent to promise or be bound." *Smith v. Boyd*, 553 A.2d 131, 133 (R.I. 1989). "In general, assent to be bound is analyzed in two steps: offer and acceptance." *Id.* Usually, offer and acceptance will be analyzed objectively, with the court "look[ing] to an external interpretation of the party's or parties' intent as manifested by action." *Id.*

Carlton made a clear offer to settle for the policy limits in his initial letter to Arbella, which stated, in part, "If, in fact, $100,000.00 is the maximum insurance for all applicable coverages you provide . . . we will accept said policy limits." ECF No. 16-6. It is also clear that Arbella's response letter constituted an objective acceptance of Carlton's offer, as it stated, "After determining that the applicable coverage limits are $100,000.00 Arbella accepts that demand." ECF No. 16-8. Therefore, from an

external interpretation of the parties' actions, there is mutual assent and the parties entered into a contract for settlement for the $100,000 policy limit.

Carlton contends, however, that as mandated by state statute, his offer was deemed rejected on the thirtieth day after it was sent, because Arbella did not respond to it within thirty days, but instead accepted it on the thirty-second day. Arbella responds by asserting that the statute does not apply unless there was a civil action in place at the time of the offer, and that because no lawsuit had yet been filed when Carlton sent his offer, there was no civil action. Rhode Island General Laws section 27-7-2.2 (2019) provides that "[i]n any civil action" in which a plaintiff makes a written offer to a defendant's insurer to settle at or within policy limits, the "written offer shall be presumed to be rejected if the insurer does not respond in writing within a period of thirty (30) days." Carlton argues that Arbella's acceptance, dated February 28, 2018, is moot because it occurred more than thirty days after his offer letter, dated January 25, 2018, and thus as a matter of law Arbella was presumed to have rejected the offer. ECF No. 17-1.

Federal courts considering state statutes must interpret them as a state would. *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 263 (1st Cir. 1994) ("It is well established that 'the "state courts are the ultimate expositors of state law" and the federal courts are bound by the constructions placed upon state statutes by state courts absent extreme circumstances.'") When interpreting Rhode Island statutes, "[i]f the language is clear on its face, then the plain meaning of the statute must be given effect." *Gilbane Co. v. Poulas*, 576 A.2d 1195, 1196 (R.I. 1990) ("The statute

5

before us does not require a search for the discernment of legislative intent as we believe the language is unambiguous.")

This count turns on the meaning of the term "any civil action" as used in the statute. Because the language is clear on its face, the Court looks to its plain and ordinary meaning. Black's Law Dictionary defines action[1] as "[a] civil or criminal judicial proceeding," where a "civil action" is "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation." *Action, Black's Law Dictionary* (11th ed. 2019). Additionally, Black's describes an action as "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree." *Id.* (quoting 1 Morris M. Estee, *Estee's Pleading, Practice and Forms*, § 3 (Carter P. Pomeroy ed., 3d ed. 1885)). Black's also notes that "[t]he terms 'action' and 'suit' are nearly if not quite synonymous. . . . [L]awyers usually speak of proceedings in courts of law as 'actions' and those in courts of equity as 'suits.' In olden time there was a more marked distinction." *Id.* (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure*, 3 (2d ed. 1899)). Black's definitions point to a conclusion that civil action is equivalent to lawsuit.

Turning to how the legislature has defined "civil action" in other contexts, both the R.I. Superior and District Courts' Rules of Procedure state that "[a] civil action is commenced by the filing of a complaint." R.I. Super. R. Civ. P. 3; R.I.D.C.R. Rule 3.

---

[1] For a definition of the term "civil action," Black's directs one to look under the word "action."

All indications are that the plain meaning of the words "civil action" in section 27-7-2.2 is a legal proceeding in court. Here, Carlton did not file suit until after he both sent the offer letter and received Arbella's response, so his offer letter and its acceptance did not occur during a civil action. Thus, Rhode Island General Laws section 27-7-2.2 does not apply.

Because there was both an offer and acceptance to the settlement, the Court finds a valid settlement agreement between Carlton and Arbella, and the Court GRANTS Defendants' Motion for Summary Judgment as to Count I.

### 2. Count III

In their complaint, the Plaintiffs allege that Arbella disregarded Rhode Island insurance settlement law as found in *Asermely v. Allstate Ins. Co.*, 728 A.2d 461 (R.I. 1999). The Plaintiffs also allege that Arbella violated various unfair claim settlement practices as found in Massachusetts General Laws chapter 176D, section 3(9)(a),(b),(f),(g),(k),(i), and (m) (2019), which, if violated, create a claim for unfair business practices under Massachusetts General Laws chapter 93A section 9 (2019).

On the facts here, there is no claim under *Asermely*, because, although it requires insurance companies to "consider seriously a plaintiff's reasonable offer to settle within the policy limits" as part of their fiduciary duty, it is clear here that Arbella did seriously consider Carlton's offer as they ultimately accepted it about two and a half months after the collision and thirty-two days after receiving the demand. 728 A.2d at 464. By settling with Carlton for the policy limit a few months after the accident date, and a month after the initial demand from the Plaintiffs, Arbella

7

engaged in timely and meaningful settlement negotiations and thus fulfilled their common law and statutory duties.

The Plaintiffs similarly allege that Arbella violated various parts of Massachusetts' unfair claim settlement practices by "failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies" and "failing to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear," among others. Mass. Gen. Laws. ch. 176D, § 3(9)(b), (f). If these laws were violated, the Plaintiffs would bring a claim for these violations under Massachusetts General Laws chapter 93A section 9, which allows consumers to bring actions for unfair business practices.

Procedurally, however, Plaintiffs are barred from bringing a 93A claim; 93A requires a prospective consumer plaintiff to send a written demand for relief to the business accused of unfair business practices at least thirty days before the filing of the action. Mass. Gen. Laws ch. 93A § 9. There is no record here of any pre-suit communication.[2]

B.  Caretaking

Count II of the Plaintiffs' complaint demands damages for Ms. Johnson's care of Carlton, namely "loss of wages, mental and emotional infliction of distress, loss of consortium benefits, and other damages." ECF No. 9-1 at ¶ 16.

---

[2] The Plaintiffs' claim may also fail on the merits as the Massachusetts courts have found even a six-month delay for settlement, absent bad faith or ulterior motive, reasonable in Massachusetts, and the facts here show a duration of only a little over two months from the date of the accident to the date of settlement. *See Doe v. Liberty Mut. Ins. Co.*, 667 N.E.2d 1149, 1153 (Mass. 1996).

8

Loss of consortium compensates spouses, parents of minor children, and minor children in the care of their parents for the loss of "consortium, companionship, and society" when a close relative is seriously injured. *Forest v. Pawtucket Police Dep't*, 290 F. Supp. 2d 215, 233 (D.R.I. 2003). However, Rhode Island law does not recognize a claim for loss of consortium by a parent who is not the parent of an un-emancipated minor. R.I. Gen. Laws § 9-1-41(c) (2019). At the time of the accident in question, Carlton was 28 years old, thus no longer a minor and so Ms. Johnson cannot directly recover for loss of consortium. Similarly, the Court finds that Ms. Johnson cannot recover for loss of wages and other damages for her caretaking because Carlton was an adult at the time of injury.

Additionally, Ms. Johnson cannot recover for infliction of emotional and mental distress, as Rhode Island law requires that a parent be present at the scene of the accident to recover for negligent infliction of emotional distress: "[I]n order to recover, a party must be present at the scene of the accident and be aware that the victim is being injured." *Marchetti v. Parsons*, 638 A.2d 1047, 1050 (R.I. 1994). As Ms. Johnson was not present the scene of the accident, she is not eligible to recover under this claim.

## IV. CONCLUSION

The Court GRANTS the Defendants' Motion for Summary Judgment. ECF No. 15.

9

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

July 8, 2019